UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**BRANDON LEA BROOKES,**                                Chapter 7
    Debtor                                              Case No. 16-10614-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is Trustee's Motion to Approve Stipulation of Settlement (the "Settlement Motion"). Pursuant to the Settlement Motion, the Trustee seeks approval of a settlement agreement between herself and Cameron Brookes ("C. Brookes") pursuant to Fed. R. Bankr. P. 9019. Stewart Title Guaranty Company ("Stewart Title") filed an Objection to the Settlement Motion. The Court heard the matter on September 7, 2018 and directed the parties to file briefs. The Trustee and Stewart Title have complied with the Court's order.

None of the interested parties requested an evidentiary hearing, and the material facts necessary to determine the issue of whether to approve the settlement are not in dispute. Accordingly, the Court finds and rules as follows.

1

**II. BACKGROUND**[1]

Brandon Lea Brookes (the "Debtor") commenced a Chapter 7 case on February 25, 2016. Debora Casey was appointed the Chapter 7 Trustee one day later.

Prior to the commencement of his bankruptcy case, on or about November 30, 1998, the Debtor purchased a Second-to-Die life insurance policy (the "Policy") from Western Reserve Life Assurance Co. of Ohio. The Debtor was the applicant and is the owner of the Policy. The Debtor disclosed his interest in the Policy on his Schedules and declared his interest in "Life Insurance" in the sum of $2,928.48 as exempt under 11 U.S.C. § 522(d)(7) and (d)(8).[2] The insured persons were the Debtor's father and mother, William

---

[1] The Court paraphrases the background facts set forth in the Trustee's Settlement Motion, her Complaint filed against C. Brookes, pursuant to which she sought the avoidance of the transfer of the beneficial interest in the Policy from the Debtor to C. Brookes under 11 U.S.C. §§ 544, 548(a)(1) and (a)(2), and her Affidavit filed on September 20, 2018.

[2] Those sections provide in pertinent part the following:

(d) The following property may be exempted under subsection (b)(2) of this section:

> (7) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract.
>
> (8) The debtor's aggregate interest, not to exceed in value $12,625 less any amount of property of the estate transferred in the manner specified in section 542(d) of this title, in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent.

11 U.S.C. § 522(d)(7) and (d)(8).

2

H. and Barbara M. Keltner. The cash benefit provided under the Policy upon the death of both insureds is $500,000, less any outstanding loan amount.

Barbara Keltner died in 2009. William Keltner is 83 years old and, according to the Trustee, suffers from Alzheimer's disease. The parties did not provide any other information about Mr. Keltner's health or actuarial information about his life expectancy. They did not submit a copy of the Policy.

At the time the Policy was purchased, and at all relevant times thereafter, the Debtor was the one hundred percent (100%) beneficiary of the Policy. The Debtor borrowed against the cash surrender value of the Policy. The outstanding amount of the loan is estimated to be approximately $50,000.[3]

On or about March 10, 2014, the Debtor changed the one hundred percent (100%) beneficial interest in the Policy to his then and current spouse, C. Brookes (the "Transfer"). Prior to the Transfer, the Debtor had experienced significant financial difficulties. The Debtor was an attorney licensed to practice law in the Commonwealth of Massachusetts. Stewart Title obtained a judgment against him in 2012 for an amount in excess of $1,000,000. The Debtor also was a principal in other business ventures, including Green Stop Energy Corporate Solutions, a solar energy enterprise, which also encountered financial difficulties prior to the Transfer.

---

[3] In her Affidavit, the Trustee stated that, at the end of 2016, the amount of the outstanding loan was approximately $52,000 and the Policy had no cash surrender value net of the loan amount.

On or about February 23, 2018, the Trustee filed a three-count adversary proceeding against C. Brookes seeking avoidance of the change in the beneficial interest as a fraudulent transfer and recovery of that interest for the benefit of the bankruptcy estate as a fraudulent transfer under 11 U.S.C. §§ 548(a)(1), (a)(2), 550, 551 and 544 and Mass. Gen. Laws ch. 109A, §§6, 8. The Defendant filed an answer denying the Trustee's allegations and asserting affirmative defenses. The Trustee and C. Brookes are now seeking to settle that adversary proceeding. The Trustee in an Affidavit submitted with her brief represented that she estimates the net value of the beneficial interest to be no more than $115,000.

Stewart Title also filed an adversary proceeding against the Debtor seeking an exception to the discharge of its judgment. On February 2, 2017, the Court entered a judgment declaring that the indebtedness owed to Stewart Title in connection with the Judgment issued by the Suffolk County Superior Court in the amount of $728,352.65, plus statutory interest, was excepted from discharge pursuant to 11 U.S.C. § 523(a)(3)(B).[4]

---

[4] In its Complaint, Stewart Title, stated that the Debtor failed to list or schedule its obligation under 11 U.S.C. § 521(a)(1) in time to permit it to timely file a proof of claim and a request for determination of dischargeability of debts specified in § 523(a)(2), (a)(4) or (a)(6), although it held a judgment against Debtor for stealing $200,000.00 at a closing through forgery and other fraudulent conduct. Though properly served with the summons and the Complaint, the Debtor did not defend, and the Court entered a default judgment against him.

### III. THE SETTLEMENT AGREEMENT

The Trustee and C. Brookes engaged in negotiations to resolve the adversary proceeding. As a result of the negotiations, the Trustee and C. Brookes entered into the Agreement, which provides for the following:

> . . . In full and final settlement of this action, the Defendant will cause to be delivered to the Trustee the sum of Forty Thousand Dollars ($40,000.00) (the "Settlement Amount") on or before July 31, 2018 (the "Maturity Date"). The Settlement Amount shall constitute an asset of the Estate, free and clear of all liens, claims, encumbrances, interests, and claims of exemption. Said payment is a compromise of a disputed claim and is not to be construed as an admission of liability of the Defendant.

> . . . The Defendant has executed a copy of the Agreement for Judgment. . . . The executed Agreement for Judgment shall be held in escrow by the Trustee.

> . . . In the event that the Defendant fails to pay the Settlement Amount on or before the Maturity Date, the Trustee, at her sole option, shall have the right to release the Agreement for Judgment from escrow and record and enforce it. In the event that the Defendant delivers the Settlement Amount in good funds on or before the Maturity Date, the Trustee shall release the Agreement for Judgment from escrow and deliver it to the Defendant, marked Paid.

> . . . Upon full payment of the Settlement Amount and upon entry of a final, nonappealable order approving the Settlement Agreement, the Trustee will dismiss the Adversary Proceeding with prejudice and without costs.

> . . . Upon entry of a final, nonappealable order approving the Settlement Agreement, and upon receipt of the Settlement Amount in good funds, the Trustee on behalf of the Debtor's bankruptcy Estate and the Debtor's creditors, thereby (i) remises, releases and forever discharges the Defendant from all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, and any and all claims, demands, and liabilities, in law or equity, which the Trustee has or ever had from the beginning of the world through the date of this Settlement

> Agreement, and (ii) releases any and all claims against, or interest in, the Policy or the proceeds thereof.
>
> . . . Upon entry of a final, nonappealable order approving the Settlement Agreement, the Defendant releases any and all claims she may have against the Trustee or the Estate.

Settlement Motion, ¶¶15-20.

## IV. POSITIONS OF THE PARTIES

A. <u>The Trustee</u>

In support of approval of the Settlement Motion, the Trustee stated: "The nominal amount of the death benefit of the Policy is $500,000. The Trustee believes that, based upon expressions of interest she has received, the value of the death benefit is in the range of $150,000 to $200,000, subject to potential reduction for the balance of the loan against the Policy. She added: "The amount of the settlement is approximately one-half of what the Trustee believes might be recovered if the Policy were liquidated. Prior to accessing this value, however, the Trustee would have to overcome several hurdles."

In her Affidavit, filed after the hearing held on September 7, 2018, the Trustee represented that on or about August 18, 2017, Partnership Liquidities Investors, LLC made a written offer to purchase the beneficial interest in the Policy for the sum of $165,000, but that the offer expressly did not include any agreement to assume any loans or liabilities associated with the Policy and was contingent upon the successful prosecution of the adversary proceeding against C. Brookes. In addition, she stated that she had received an offer from JM Partners for $75,000 which was subject to reduction for

6

any fees, loans, and penalties and was also contingent upon the successful prosecution of the adversary proceeding.

The Trustee also disclosed in her Affidavit that she had contacted Melville Capital, a broker in life insurance policies and learned that the beneficial interest might have a value of $150,000 to $200,000 without taking into account any reductions for fees, loans, penalties, or the successful prosecution of the adversary proceeding against C. Brookes. The Trustee learned that the brokerage commission "might be in the range of 18%." Thus, the Trustee reassessed her belief as to the value of the death benefit, estimating the net value of the beneficial interest would be no more than $115,000. She concluded that, given the costs of monetizing the beneficial interest, "$40,000 is fair, reasonable, and in the best interests of the bankruptcy estate." The Trustee also stated in her Affidavit that Stewart Title had not made an offer to the estate to purchase the estate's claims for relief against C. Brookes that are set forth in the adversary proceeding.

The Trustee revealed that secured and priority tax claims were approximately $10,000 and unsecured claims totaled approximately $1,750,000, adding that during the pendency of any litigation the Policy is at risk of lapse through nonpayment of premiums.

The Trustee raised several substantive legal issues that factored in her decisions to compromise the claims against C Brookes, stating:

> The Defendant [C. Brookes] has also asserted substantive grounds to challenge the avoidability of the Transfer. The Defendant has alleged that the Policy is exempt and that the beneficial interest is inseparable from the Policy itself. The Defendant further alleges that the beneficial interest is an expectancy interest as to which the Trustee may not recover. Each of these issues would need to be briefed without certainty as to result.

7

The Trustee distinguished the case of Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610 (9th Cir. 1988), a case in which the court determined that § 522(d)(7) exempts only the Debtor's rights to the life insurance contract itself and not any beneficial rights, such that the Debtor's potential rights to the death benefit constitute a nonexempt asset, citing BancOhio Nat'l Bank v. Walters, 724 F.2d 1081 (4th Cir. 1984).  In Walters, the court rejected the argument "that 11 U.S.C. § 541(a)(5) requires that proceeds of life insurance policies paid to a bankrupt-beneficiary within 180 days of his filing of the bankruptcy petition be included in the estate as after-acquired property, notwithstanding the exemption provided by § 522(d)(7)." Id. at 1082.  The court in Walters, stated: "We read the language of § 522(b) which provides that '[n]otwithstanding section 541' a debtor may elect any of the applicable exemptions provided by § 522, to make the exemption provisions of § 522(d)(7) dominant over the after-acquired inclusion provision of § 541. . . ." Id. at 1083.  The court concluded:

> [W]e agree with the bankruptcy court and the district court that the debtor here might properly elect the § 522(d)(7) exemption covering "any unmatured life insurance contract owned by the debtor . . ." to exempt the proceeds of the policies in issue. The proceeds derived from such policies "owned by the debtor and claimed by him as exempt ... flow as an incident of ownership of the contract to the debtor rather than to the estate." In re Walters, 14 B.R. 92, 94, 5 C.B.C.2d 99, 102 (Bkrtcy. S.D. W.Va. 1981). We are satisfied that this result does not offend the operation of § 541(a)(5) since proceeds from like insurance policies *not* owned by the debtor would be included in the estate. As the bankruptcy court stated, if the debtor fulfills his contractual obligations, payment of premiums, he should not be denied the benefits of the contractual relationship. In this sense, proceeds do not represent a windfall, as they would in the case where the debtor does not own or pay premiums on the policies. Id.

8

Walters, 724 F.2d at 1083 (emphasis in original).[5]  The Trustee observed that in both Woodson and BancOhio the insured died within 180 days of the petition date, while the insured in the present case is still alive, more than 180 days after the filing.

The Trustee also asserted that even if the Court were to adopt the Woodson approach, namely that the proceeds of the Policy are a separate non-exempt asset, the issue arises whether such beneficial interest constitutes only an "expectancy" under § 541(a) of the Bankruptcy Code. Additionally, the Trustee, citing conflicting decisions, points to a related issue concerning whether a trustee may name himself or herself the beneficiary of a policy, *compare* Lekas v. Mann (In re Lekas), 299 B.R. 597, 603 (Bankr. D. Ariz. 2003) ("The right to designate and/or change the beneficiary, however, does not

---

[5] In Woodson, however, the court distinguished Walters, stating:

> The analysis advanced by Woodson and the Fourth Circuit overlooks the distinction between owning a policy and being its beneficiary. Section 522 only protects the debtor's ownership interest in the policy, that is, the right to maintain the policy and name a beneficiary. See H.R.Rep. No. 595, at 361, reprinted in 1978 U.S.Code Cong. & Admin.News at 6317 (section 522(d)(7) "refers to the life insurance contract itself. It does not encompass any other rights under the contract, such as the right to borrow out the loan value"); 3 *Collier* ¶ 522.16, at 522-63 (same). Section 541, on the other hand, deals only with proceeds the debtor receives as a beneficiary, a status not necessarily coextensive with that of ownership. One can own a policy yet not be its beneficiary and, conversely, one can be the beneficiary of a policy one does not own. Section 522 deals with one interest, section 541 with the other. That the debtor in this case happened to wear both hats is of no consequence. We must treat the two interests disparately because the Bankruptcy Code does so. *See* In re Poynor, 68 B.R. at 923 ("[t]his distinction between ownership rights and beneficiary rights appears to be more consistent with the intent of the Bankruptcy Code").

839 F.2d at 617 (footnote omitted).

become property of the estate."); In re Herrell, 210 B.R. 386 (Bankr. N.D. Fla. 1997) (same), *with* In re Butcher, 72 B.R. 240, 244 (Bankr. E.D. Tenn. 1987) ("This court finds no statutory basis nor historical precedence for concluding that this power is in any way limited other than by the terms of the policy. The debtor simply has no right to remain as the beneficiary of a policy she no longer owns where the new owner desires to change the beneficiary.").

In addition, the Trustee raises an issue as to whether a change in beneficiary on a life insurance policy is properly the basis for an avoidance action. *Compare* Fed. Kemper Life Assurance Co. v. Wolensky's Ltd. P'ship (In re Wolensky's Ltd. P'ship), 163 B.R. 615, 627 (Bankr. D.C. 1993) ("a change in beneficiary is subject to a fraudulent conveyance action by any creditor who would have had an interest in the proceeds but for the transfer."), and John Hatton, Inc. v. Hatton (In re John Hatton, Inc.), 104 B.R. 705, 707-08 (Bankr. W.D. Pa. 1989) (holding debtor's change of beneficiary designation on life insurance policy from himself to wife after being diagnosed with lung cancer was a fraudulent conveyance), *with* United Bank v. Buckingham, 301 F.Supp.3d 561, 573-74 (D. Md. 2018),[6] and Ragsdale v. Klein (In re Fashion Accessories, Ltd.), 308 B.R. 592, 595

---

[6] In Buckingham, the court observed:

> Under the MUFCA, a "conveyance" is defined as "includ[ing] every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." Md. Code Ann., Com. Law § 15–201(c) (West 2017). Thus, the relevant inquiry is whether a life insurance policy beneficiary designation creates a property interest under the MUFCA. No Maryland court has addressed that specific question.

(Bankr. N.D. Ga. 2004) ("A beneficiary by revocable designation of an unmatured life insurance policy has no vested property right or interest under that policy absent an agreement or another legal obligation binding the policy owner to transfer such rights to the beneficiary."). *See also* Wornick v. Gaffney, 544 F.3d 486 (2d Cir. 2008), UBS Fin. Servs., Inc. v. Brescia, 24 F.Supp.3d 128 (D. N.H. 2014), Mackenzie v. Badillo (In re Meza), 465 B.R. 152 (Bankr. D. Ariz. 2012).

B. Stewart Title Guaranty Company

Stewart Title prefaced its grounds for objection by asserting that it is an unsecured creditor of the Debtor with a claim in the sum of $728,352.65, representing 70% of the claims filed by creditors in the Debtor's bankruptcy case, adding that its debt is excepted from discharge under 11 U.S.C. § 523(a)(3)(B). Stewart Title contends that "[t]he Trustee

---

The Court of Appeals of Maryland has held in other contexts, however, that the status as a beneficiary of a life insurance policy creates only a mere expectancy, not a property interest. In Wooddy v. Wooddy, 258 Md. 224, 265 A.2d 467, 473 (1970), the Court of Appeals rejected a claim by a former wife that her children were entitled to a constructive trust over certain life insurance policies taken out by her former husband. The court held that

> the fact that [the former husband] may have at one time designated the children as beneficiaries or intended the policies to be used for [the children's] education does not, standing alone, create rights which may be asserted by the children or in their behalf to require him to keep the policies in force or to prevent him from changing the beneficiary he had designated

Wooddy, 265 A.2d at 473.

United Bank v. Buckingham, 301 F. Supp. 3d at 571–72.

is seeking to settle a claim worth $450,000.00 (after reduction of the outstanding loan balance and before administrative fees and expenses) for $40,000.00 (before administrative fees and expenses) — less than 10% of the anticipated death benefit under the Policy."

Stewart Title rejects the Trustee's contention that she would need to engage a broker, asserting that such an action would be unnecessary. It states the following:

> The Trustee can easily conduct a sale of the beneficial interest through the trustee website on her own without the need to incur the additional cost and expense of a broker. The trustee website, which can be found at https://www.marketassetsforsale.com/, allows trustees across the country to post assets being sold in connection with bankruptcies in an online marketplace open to the public without charging any fees or commissions.

In addition, it rejects the notion that the beneficial interest in the exempt Policy is inseparable from the Policy itself, contending that Debtor's exemptions are limited to his ownership interest in the Policy and any cash surrender value up to $12,625. Citing In re Gonzalez, No. 12-70650, 2012 WL 5467938 at *3 (Bankr. M.D. Ga. Nov. 8, 2012) (wherein a debtor sought to exempt the sums payable upon maturity of a life insurance policy, the Court held that "§522(d)(7) exempts only the life insurance contract itself and not any beneficiary rights…"); and Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610 (9th Cir. 1988), it argues that § 522(d)(7) only exempts an ownership interest in an unmatured life insurance policy, not a beneficial interest, which renders C. Brookes's contention that the Policy and the beneficial interest are inseparable unmeritorious.

In its supplemental brief, Stewart Title argues that BancOhio was wrongly decided and the majority of courts rules in a manner consistent with Woodson. *See* In re Poynor,

68 B.R. 919, 923 (Bankr. N.D. Tex. 1987). Stewart Title adds that § 522(d)(8) only exempts "any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent," *see* 11 U.S.C. § 522(d)(8), and that the statute also caps the value of the exemption at $12,625.00. Id. Thus, according to Stewart Title, the exemption only covers any cash surrender or loan value of the Policy up to $12,625.00.

With respect to the issue of whether the beneficial interest is only an "expectancy interest" under § 541(a)(5)(C), Stewart Title argues as follows:

> If Section 541(a) bars the Trustee's recovery as a matter of law, then the Trustee should not attempt to settle a worthless claim for minimal value to the substantial detriment of the Debtor's individual creditors whose individual state law rights to recover the beneficial interest are not barred by Section 541(a). If the beneficial interest, as a matter of law, cannot constitute property of the Debtor's estate, then the Trustee should abandon his attempt to settle the claim for a minimal return as any such settlement will only unfairly prejudice the rights of individual creditors who are not so barred from recovery.

Finally, Stewart Title, noting that the annual premium for maintaining the Policy is $13,825, offered to pay the premiums, subject to an agreement with the Trustee to provide for repayment of such amounts paid for the premiums out of any recovery prior to any distribution to the creditors.

**V. DISCUSSION**

A. Applicable Law

Bankruptcy Rule 9019(a) provides, in relevant part, that "On the motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." While the decision to approve a particular settlement lies within the sound

discretion of the Bankruptcy Court, courts should give deference to the business judgment of the estate representative, if the settlement falls within the range of reasonableness. Jeffrey v. Desmond, 70 F.3d 183 (1st Cir. 1995). *See also* Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87 (B.A.P. 1st Cir. 1997); In re Fibercore, Inc., 391 B.R. 647, 655 (Bankr. D. Mass. 2008) (citing Whispering Pines Estates, Inc. v. Flash Island, Inc. (In re Whispering Pines Estates, Inc.), 370 B.R. 452, 461 (1st Cir. BAP 2007), and In re 110 Beaver St. P'ship, 244 B.R. 185, 187 (Bankr. D. Mass. 2000)).

In determining whether to approve a proposed compromise under Fed. R. Bank. P. 9019, the bankruptcy court is expected to "'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'" Jeffrey v. Desmond, 70 F.3d at 185 (citations omitted). The Bankruptcy Court may consider, among other factors, the following:

> (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

Jeffrey v. Desmond, 70 F.3d at 185 (citing In re Anolik, 107 B.R. 426, 429 (Bankr. D. Mass. 1989)).

B. Analysis

If the dispute between and the Trustee and C. Brookes were not settled, numerous complicated factual and legal issues would have to be litigated at a substantial cost to the estate. In view of the undisputed facts, and the conflicting cases cited by the Trustee and Stewart Title, as well as the arguments of the parties pertaining to a number of difficult

14

and intractable issues presented, the Court concludes that deference to the Chapter 7 Trustee's business judgment is warranted. While the amount of the settlement appears, at first blush, to be small in relation to the death benefits under the Policy, given the uncertainty as to Mr. Keltner's life expectancy, the costs and substantial risks associated with obtaining a judgment against C. Brookes in the adversary proceeding, as well as the absence of any offers to purchase the beneficial interest in the Policy without contingencies, the Court is compelled to defer to the business judgment of the Chapter 7 Trustee. The Trustee's Affidavit details her efforts to monetize the beneficial interest in the Policy through solicitation of offers without success. Moreover, while Stewart Title has offered to pay the annual Policy premiums subject to reimbursement, it has not made an offer to the Trustee to acquire the beneficial interest it claims has substantial value.

Thus, the Court concludes that the proposed settlement between the Trustee and C. Brookes fairly balances the value of the claims being compromised against the value to the estate of the acceptance of the compromise proposal. *See* Jeffrey v Desmond, 70 F.3d at 185. In this regard, the Trustee is not guaranteed success in the litigation. Indeed, the legal authorities cited by the parties suggest that the Trustee's case is not without substantial legal hurdles. In addition to complex issues, the litigation would not be without the consequential expenses associated with dispositive motions and the potential need to prepare for and conduct a trial on the merits. Moreover, there would be delay and inconvenience associated with the litigation. While Stewart Title is the largest creditor, its debt is excepted from discharge and it may pursue the Debtor to collect the obligation owed to it after the bankruptcy case has been closed. In its Objection, Stewart

Title proposes a simple solution to a complex problem by stating that the Trustee "can easily conduct a sale of the beneficial interest through the trustee website," an unwarranted position that overlooks the need for the Trustee to litigate and to prevail in the adversary proceeding and any appeal. The paramount interest of those creditors whose debts will be discharged, however, is best served by this settlement which will increase the likelihood that they will receive a dividend in the case.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Trustee's Settlement Motion.

By the Court,

*[signature]*

Joan N. Feeney
Dated: October 25, 2018          United States Bankruptcy Judge